May it please the court. I'm Daniel Kaplan. I represent the appellant, Jarvis Juan, and I'm going to watch the clock and attempt to save two minutes for rebuttal. What I'm holding here is the supplemental excerpt of record that the government filed in this appeal, and the bulk of it is taken up with a transcript of a hospital bed interview that Christina Juan gave to a tribal police officer named Romo Lewis. Now, when Christina Juan made the statements that are in this interview, she was under the influence of quite a bit of alcohol, cocaine, pain medication. She was also experiencing pain because there was alcohol on the abrasions she'd received in the incident, and she was very, very angry. I appreciate this aspect of your argument, counsel, and you've done a good job in your briefs arguing this as well. I'm frankly interested primarily in whether Webb applies in this situation. Obviously, the facts of Webb are different than this. There you have the government directly interfering with the defense's lawyer. Actually, it was the judge, I guess. Here you have a situation where this is the government's witness, and relying upon that hospital bed commentary, she refuses to testify. You're saying that we should apply Webb in this situation for the benefit of your client. It wasn't objected to on a plain error basis because nobody knew whether Webb applied in any event. You also have a situation here, at least as I view it, where the record is silent about whether Christina ever heard the prosecutor's threats, whether Christina's lawyer was giving a copy of the transcript relaying the threats to Christina, whether Christina's lawyer was separately threatened by the government, and if so, whether the lawyer ever communicated those threats to her. To me, those are critical issues, even if Webb does apply. So at least for my part, and I don't know whether my colleagues agree, I'd be very interested in your elucidating why Webb applies, under these circumstances, whether you've carried your burden to use Webb in this context. Thank you, Your Honor. Well, I'll answer those in the order you presented them. I think that the principles of Webb clearly apply here on an a fortiori basis, because the due process violation is even worse in a situation like this. And a case that goes directly to both of your questions is the McNutt case, an Eighth Circuit case that we discussed in the brief. McNutt addresses a situation like this case where it was the government's witness. And in McNutt, there was no objection at trial. This was a plain error analysis that was – a plain error was found. It was before Rule 52B was enacted. But in McNutt, the Eighth Circuit said this case is governed by cases like Weiborg v. United States. If you look at the notes to Rule 52B, plain error, it says, this is a statement of existing law in sites, among other cases, Weiborg v. United States. So the Eighth Circuit in McNutt said, when the government calls a witness, and that witness, even though called by the government, ends up giving testimony favorable to the defendant, and then uses a threat, and then a threat is interposed, and I submit to you vavages from this Court show that it doesn't matter whether the threat comes from the court or the prosecutor, I would say it makes sense that it's worse if it comes from the prosecutor, because prosecutors, unlike courts, actually file indictments and charge people with crimes. Okay. Let's say you're right and say we're not – that we should be persuaded by the Eighth Circuit's reasoning regarding Weib. What evidence do you have of the four matters that I mentioned that Christina ever received, heard or received indirectly the threats, as you characterized them, made by the prosecution? The clearest evidence, Your Honor, is that a lawyer was appointed specifically to advise Ms. Wan about the prosecutor's suspicion that she committed perjury on the stand, not that she might commit perjury, not that there was a possibility or a risk for Christina to think about it, but that she actually did commit perjury on day two of the trial. The lawyer was appointed to advise her. The lawyer came back to court and said, I have spoken with her. If the lawyer was even minimally competent, and there's no reason to doubt that he was, he would have advised her, the prosecutor believes you've committed perjury. Where is this in the record that you're referring to? Well, the record shows that the prosecutor stated that a lawyer needed to be appointed. No, I understand that. What I want to know is the exact point in the record, because I want to know what was said in court that dealt with the appointment of the lawyer. My recollection is a little different than yours, and that's why I want to read exactly what was said. I don't know that I've marked exactly the pages where all these comments are made, but I can submit a supplement after the argument and cite those page numbers. But what happened was the prosecutor stated he thinks she needed a lawyer appointed. The judge appointed a lawyer. The lawyer was Tyrone Mitchell, an experienced trial attorney. Tyrone – there were references. The prosecutor then made a reference to the fact that the lawyer appointed for Ms. Wan had requested transcripts, and the prosecutor was going to send him transcripts. We don't know which transcripts, but transcripts were apparently sent by the prosecutor to Mr. Mitchell. Then there was a reference by the prosecutor to the fact that the government's FBI agent on the case was having discussions with Mr. Mitchell, Ms. Wan's appointed counsel, discussions about jail calls. We don't know what those included, but jail calls and what they called honey-do letters, communications between Mr. and Mrs. Wan. And then Mr. Mitchell showed up in court on the third day of trial when Ms. Wan, quote-unquote, corrected her testimony and said, I have spoken with her and she is ready to testify. And then she went ahead and gave her testimony. And that's pretty much the end of it. Obviously, we don't know the substance of attorney-client communications. So from your perspective, the fact that Mr. Mitchell was appointed for Christina, and again, we'll look at the record exactly. But let's just say hypothetically that the government said this lawyer must be appointed because we're going to charge this woman with perjury, and under the circumstances, she needs to be represented. That's one thing. On the other hand, if he said something like, you know, we have some real problems with this. We don't know what we're going to do. But just to be safe, let's get somebody to represent her so that neither of us steps out of bounds. And that's another matter. So I'll be interested to see what the record actually says. I thought I'd read that, and it seemed more like the latter than the former, but I'll read that with interest. Let me ask you a question that you raised, lawyer-client privilege. Is that something she might have waived in order to establish that she was indeed told about the prosecutor's threats? The record doesn't indicate that she actually waived that. But could she have in order to preserve this at any time? Well, I think that that could happen. And I want to note something before I sit down and wait for rebuttal here. If the Court believes that it's simply unclear on the existing record exactly whether there was a threat and due process rights were violated under Webb, McNutt and similar cases, the proper course is not what the Government suggests, which is to assume away the constitutional violation. The proper course, as this Court did in the United States v. Lord, is to remand the case for an evidentiary hearing. And if the evidentiary hearing takes place, Ms. Wan may indeed waive her attorney-client privilege and say more. I would like to sit down for rebuttal now. Okay. Very good. We'll hear from the Government. Good morning. Joan Rufinock, District of Arizona, on behalf of the United States. It's a claim of substantial interference where the witness's testimony is very fact-specific and the burden is on the defendant to show that there were threats or coercion against a witness that were above and beyond what the record indicated is necessary and appropriate. And although you're absolutely right, it is very fact-specific. And from the Government's perspective, what evidence would you cite as to in the record that would indicate that there were no threats of any kind made to either Christina directly or that would have been made indirectly through the appointment of the lawyer? What record sites can you give us? I'd start at page 189. This is ER? ER 189. Okay. And when you look there, you see that the court tells the witness, you may step down. And we have a 20 to 30 second, because there's the timing on the page, but it's not line by line. And did she leave the courtroom? There's no direct evidence on that. But I'd point the Court to the fact that the defense had invoked the rule that witnesses were not to be present when they weren't testifying. And that's earlier in the record? That's yes. And where is that? I don't have an exact citation, but I believe that it's in the Government's opinion that the witness was not to be present before any testimony was taken that the rule was invoked. Okay. After that, what we have is a 23-minute legal argument based on the Federal rules of evidence as to why the Government should be permitted to impeach this witness with her prior recorded statement. During that argument, obviously because it's an argument regarding impeachment, the Government did say that in the Government's opinion that the witness had lied and testified falsely before the Court. And that, assuming for a moment that Christina was no longer in the courtroom, that legal argument in and of itself, from the Government's perspective, was not anything more than just a legal discussion. It was frustrated, wanted to know how to deal with this witness, and there was a tussle over how that happened. Happens all the time, right? Exactly. It's a necessary and appropriate argument to the district court in support of its position. What happens after that 23 minutes of legal argument is the prosecutor says, and this is at page 200 of the excerpts of record, and, you know, I'm beginning to wonder, to be honest with you, I'm beginning to wonder if she needs a lawyer appointed, because I believe she's committed perjury. And after looking at jail calls between her and her husband, I actually believe she's committed perjury. The Court, well, you're looking at me as if I should, the prosecutor. I wonder if she should have a lawyer appointed. I don't know. The Court, well, I'm going to finish this legal discussion on the Crawford issue and we'll come back to it. And then the Court comes back to it on page 202 of the excerpts of record. And the witness, let's see, the witness is still on the stand.  So I'll direct the counsel to be appointed for the witness. And defense counsel says, and if she doesn't testify, I'm prepared to move to strike her testimony and for a mistrial. And so based on that record, the prosecutor and the district court did what was necessary and appropriate. The government had in its position, in its possession, and the Court has it as well in the supplemental excerpts of record, a 30-something page transcript that was made, which is, as the district court described it, breathtaking and diametrically opposed to the witness's trial testimony. The government, as an officer of the Court, has an obligation, first of all, to make its legal arguments, but second of all, to bring potential perjury to the Court's attention. Did the Court have the, what, the supplemental excerpts of record, which I gather was the hospital interview before it when the Court made a decision to appoint legal counsel for her? It was Exhibit 11. And I've got to see, 11, 727. It was admitted at 195 and 199 of the excerpts of, I'm sorry, 288 and 295 of the excerpts of record. So, no, it would have been actually admitted into evidence subsequent to that. Okay. The Court did not have that. It just knew the representations of government counsel, right? It had the written transcript at that point. But 15 minutes before that, the prosecutor in the courtroom had played, outside the presence of the jury, the tape of that proceeding for the witness to see if it refreshed her recollection. So the district court had the benefit of hearing the tape. Okay. So the, from the government's perspective, the 23-minute discussion between defense counsel and government about what to do in this was nothing more than this is what we're considering. Out of an abundance of caution, she probably ought to have a counsel. No decision had been made at that point whether or not there would be any kind of prosecution for perjury, right? There was never even a mention of prosecution. None whatsoever. It was all in theoretical discussion of these are the rules of evidence, this is what we believe we should be able to do to impeach her under the rules of evidence. We think she may be committing perjury. Would you appoint counsel for her? And that was done. And with regard to the issue of appointment of counsel, the court was asking some questions. And at ER 386, the government, the court says, is the witness going to be testifying as far as you know? And the government represents to the court that we've been advised by Mr. Mitchell, who was appointed counsel, that he's told her to tell the truth and we'd expect her to do that. And the fact is that the court hasn't questioned them. And at page 386, the defense's office has testified to that. And then at page reich. So, again, to try to understand this, Mr. Mitchell is an officer of the court. Presumably, whether he was aware of what had been discussed previously or not, would advise his client to tell the truth, right? Yes. He would not have to have been told, hey, they're thinking of prosecuting you for perjury. Exactly. In order to advise her to tell the truth. Exactly. And I, again, go back to the case law of avages. It's got to be some kind of a threat over and above what's necessary and appropriate. So for defense counsel, or for the witness's counsel to discuss with her, you know, there's been an allegation that you may have committed perjury, that you're not telling the truth, that you can potentially be prosecuted for that. There would be nothing wrong with giving warnings. It's only if it's over and above. Counsel? Go ahead. Judge Gould, if I could interject a question. What's your best argument as to why the appellant is not entitled to an evidentiary hearing? Because it was his burden under vavages. It's his burden to come forward with evidence that there was this substantial interference. And he's come forward with nothing. So whether you were to review under just a harmless error review or, as the government suggests, plain error, the burden is on him to come forward, and he simply didn't do it. He could have done it during the course of trial. He could have done it in the form of a motion for new trial. He had avenues available to him. Instead, he raises the issue for the first time on appeal and doesn't have the record to do it. And so the government's position is that he's failed. I'm sorry. Again, I'm interfering with your comment. No, I think counsel's answered my question. Thank you. I was just wondering, you mentioned a harmless error. Did you mean clear error or harmless error? Well, a clear error had the district court made some factual findings. But really, this issue was not presented to the district court. I understand. I was wondering how you get to harmless error. Well, under Webb, Webb didn't do a harmless error analysis, but that's because Webb was decided before Bank of Nova Scotia, which says that when there's allegations of prosecutorial misconduct, that they can be reviewed or should be reviewed for harmless error. So if the objection had been made and we were on that standard of review, it would be harmless error. So just to summarize then from the government's position is, Webb probably doesn't apply anyway, but if it did apply, that in this case you've got one, the defendant in this case, who's one step removed. This is not his witness. It's the government's witness. There was a discussion before the court on an evidentiary basis of what they were going to do. We don't know what was said between Mitchell and Christina. And this is an evidentiary burden issue. Your view is that if the defense really had a concern about this in a motion for a new trial or some similar motion, it could very well have brought this to the attention of the district court. And it's not that the district court has no concern about this.   it would have brought this to the attention of the district court. It did it for the first time on appeal, and it's just too late. Is that basically your position? Exactly. And I'd cite Vavages for that position, because, as the Court's aware, in Vavages, it was raised by the district court post-trial. And that's when they had the hearing. Thank you. If the Court has no other questions. I think not. Thank you. So we'll hear rebuttal in. Thank you, Your Honor. A quick correction. The supplemental excerpt of record, the transcript from that interview actually was not admitted. However, the parties did agree that it should be considered part of the record on appeal. Now the issue of the issue of where did the parties agree that it should be submitted I'll have to supplement with the page number of that as well. I believe it was in the last day of trial in the beginning of the day. Okay. The issue of whether this was simply something done out of an abundance of caution. I would point the Court to the Third Circuit case of United States versus Morrison, which is cited in the briefs. In that case, the issue of the prosecutor's good faith was raised. And the Third Circuit said the prosecutor's good faith would be relevant if the prosecutor were being prosecuted for intimidating a witness. But it's not relevant to the question presented in a case like this. And the reason it shouldn't be relevant and isn't relevant is that if you imagine yourself in Christina Wan's shoes, would it matter to you, would you feel threatened to know that the prosecutor is saying that you lied on the stand because you didn't say what you said in that hospital bed interview when you were drunk and angry? All true. But let's just you still have to deal with the actual record here, Mr. Kaplan. And what I'm frankly troubled about is, as the government said, you didn't – I'm not saying it wasn't necessarily you, but whoever didn't bring motion for a new trial based upon this deal with us before the district court. We hear about this for the first time on appeal. It's so tangential. We don't know whether Webb applies. And you've got all these issues. Did she know? Was she threatened? What did Mitchell say? We don't know what Mitchell said. And that's your burden, is it not? Well, it certainly would affect the burden. However, I would make a couple of points about this. In the United States v. Lord, the defense counsel did not request an evidentiary hearing. The only thing that the counsel did in Lord was to ask that immunity be granted to the witness, and that was declined. So to the extent you have to preserve a request for an evidentiary hearing on these things, or that the argument is made here. Are you saying that plain error is not the test here? Well, in Vavage's, there was no objection. I'm just asking whether in this case you can see that plain error is the standard. I think that since Vavage's is the most closely on point case, it should be the standard applied there harmless beyond a reasonable doubt. However, I do think that if plain error applies, it should be considered plain error, as in McNutt, and an unpublished case we cited called Chavarria. Because one final point I'd like to make, this was crucial evidence. They had to show a specific intent to do bodily harm. This was in the dark of night. Karen Enos had a lot of serious problems with credibility. And Christina's testimony about what she said on that hospital bed, which the government threatened her and got her to say on day three of trial, became the linchpin of the rebuttal closing argument about his state of mind and his specific intent. Okay. Thank you both. A very interesting argument, well argued on both sides. The case just argued is submitted. You'll hear from us in due course.
judges: Sack, Gould, Smith